**STUCKEY DIAMONDS, INC., Appellant,**

**v.**

**HARRIS COUNTY APPRAISAL DISTRICT and Harris County Appraisal Review Board, Appellees.**

No. 14–00–00766–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 18, 2002.

Terry B. Joseph, Montgomery, for appellant.

Mario L. Dell'Osso, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## OPINION

SCOTT BRISTER, Chief Justice.

Stuckey Diamonds, Inc. is a manufacturer and wholesaler of jewelry in Houston. Its inventory is subject to annual appraisal and assessment for business personal property taxes. TEX. TAX CODE § 6.01(a). In its 1999 rendition, Stuckey reported it paid $7,884,673.00 for its inventory, but estimated current value at only 10% of that amount. The Harris County Appraisal District disagreed, and after Stuckey filed a protest, so did the Harris County Appraisal Review Board.

Stuckey appealed to the district court. At trial, Stuckey's estimate of its 1999 inventory was somewhat more generous— its expert appraised the inventory at about 57% of cost. The trial court agreed with the District's experts and valued it at $7,726,890.00, or about 98% of cost.

After trial, the trial court signed findings of fact and conclusions of law. Unsatisfied, Stuckey requested 103 additional findings and conclusions, all but three of which the trial court refused. On appeal, Stuckey seeks reversal because the number of findings was too low and the valuation was too high. Finding no error, we affirm.

## Refusal to Enter Additional Findings and Conclusions

■ In an appeal of an appraisal, the only question the court must settle is the appraised value of the property. TEX. TAX CODE § 42.24(1). This figure was included in the trial court's nine findings and conclusions signed on March 9, 2000. Never-

theless, Stuckey filed a request for 103 additional or amended findings and conclusions on March 20, 2000.

■ Findings and conclusions are equivalent to a jury verdict on special issues. *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). A trial court should not make findings on every controverted fact, but only those having some legal significance to an ultimate issue in the case. *Vickery*, 5 S.W.3d at 255. Additional findings and conclusions are not required if they are merely evidentiary, or aimed at tying down the court's reasoning rather than its conclusions. *See Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex.App.-Houston [1st Dist.] 1995, writ denied) (holding only necessary finding was ultimate issue—whether division of marital estate was just and right— rather than evidentiary findings as to parties' relative earning capacities, investments of separate property in community residence, or cruelty). A request for additional findings must be specific; it cannot be buried among minute differentiations or numerous unnecessary requests. *Vickery*, 5 S.W.3d at 254.

In this case, Stuckey's requested findings and conclusions were merely evidentiary, nuances of facts already found, or otherwise unnecessary. Although Stuckey claims the trial court's refusal caused the rendition of an improper judgment and prevents it from adequately presenting its appeal, it fails to cite one example of how this could be the case.[1] The trial court did not err in refusing to enter these addition-

---

1. Stuckey argues that because the trial court crossed out 100 of Stuckey's requested findings and wrote "not established" beside them, this acts as a factual finding *against* the requested findings. But the trial court's order making three additional findings included a

statement that the remaining requested findings were refused as "not established *as necessary findings*" (emphasis added). Construing both documents together, it is clear these findings were rejected not because they were wrong but because they were unnecessary.

al proposed findings, and appellant's first point of error is overruled.

### Findings as to Market Value

 In its second point of error, Stuckey argues the trial court erred in applying the Tax Code. In its third and fourth points of error, Stuckey challenges the factual sufficiency of the evidence to support the trial court's market value. Because the arguments presented by Stuckey in support of these points are closely related, we review them together.

Taxable property is generally appraised at its market value on January 1st using generally accepted appraisal methods and techniques. TEX. TAX CODE § 23.01. "Market value" for inventory is the price for which it would sell as a unit to a purchaser who would continue the business.[2] *Id.* at § 23.12. Stuckey argues that because the appraised value in the judgment was 98% of its cost, the trial court incorrectly valued inventory at its cost on a piece-by-piece basis rather than the amount a potential buyer would pay for it as a unit.

The District's experts admitted their valuation closely approximated Stuckey's costs, but maintained this was the correct value under the statutory definition. They noted the statute precluded comparison with jewelers who were in financial distress or liquidation. In their cost-approach analysis, they began with the cost of Stuckey's inventory, then applied a 2% discount to reflect Stuckey's regular clearance sales and a transportation adjustment.[3] They then conducted a market-approach analysis, reviewing (1) four buy/sell transactions of jewelers reported to the Securities and Exchange Commission, and (2) four other sales transactions known to one of the appraisers. According to the District's experts, these figures confirmed that in most sales of inventory between jewelers not in financial straits, the price was very close to the original cost of the inventory. *See Sears Roebuck & Co. v. Dallas Central Appraisal District,* 53 S.W.3d 382, 389–90 (Tex.App.-Dallas 2000, pet. denied) (holding that book value of inventory can be equivalent to its market value).

By contrast, Stuckey's expert valued its precious stones at 12.5% of cost "because nobody wants them to begin with," and semi-precious stones at 5% of cost because "it's even harder to sell [them]." He opined that deep discounts were necessary in all of Stuckey's inventory because prospective purchasers would instead "go to New York and buy everything you want individually." But this latter remark indicates the District's experts were right— the best benchmark for the value of the inventory as a unit was the amount it would cost to buy the items individually.

We disagree with Stuckey that the trial court's adoption of the District's valuation represents a misapplication of the law. The District's experts cited the proper standard and stated their opinion as to the value if the inventory was sold as a unit. Just because it was their opinion that a purchaser would have to pay close to cost for the inventory does not mean they applied the wrong standard.

---

**2.** This definition of "market value" under section 23.12 of the Texas Tax Code is a specific definition applicable to inventory.

**3.** Owner Jay Stuckey testified the company conducted vault clearance sales nine times in 1999 to keep its inventory current. Based on historical data from these sales in Stuckey's books, the District's experts determined that Stuckey's discount from cost on these sales was less than 2%. The transportation adjustment was to reflect costs that would be incurred by a seller that chose to continue the business at another location.

Moreover, there is a common sense to the District's appraisal that is lacking in Stuckey's. Jay Stuckey testified that the company turns over inventory more than twice each year through regular and vault clearance sales. No doubt its manufacturing and marketing services add value to the inventory, but it is hard to imagine how Stuckey could stay in business by buying inventory for almost twice what it was worth.

Stuckey additionally argues that its expert was more qualified than those of the District. In general terms, Stuckey's expert had more personal experience in buying and selling jewelry inventories, while the District's experts had more qualifications and certifications in general property appraisal and accounting. But Stuckey raised no objection at trial to the qualifications or reliability of the District's experts or their report. Absent such objections, the proper weight to give business experience versus professional training and expertise is for the trier of fact. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995). We cannot settle questions of credibility or substitute our judgment for that of the trial court. *Ortiz v. Jones,* 917 S.W.2d 770, 771 (Tex. 1996).

We find sufficient evidence to support the judgment, and that the findings are not against the great weight and preponderance of the evidence. *See Ortiz* at 772. Appellant's second, third and fourth points of error are overruled.

The judgment is affirmed.